UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA by and through SACRAMENTO METROPOLITAN AIR QUALITY MANAGEMENT DISTRICT,<br><br>            Plaintiffs,<br><br>  v.<br><br>HARDESTY SAND & GRAVEL, a California business in a form unknown, JOSEPH HARDESTY as an individual and as the owner or officer of HARDESTY SAND & GRAVEL; YVETTE HARDESTY as an individual and as the owner or officer of HARDESTY SAND & GRAVEL and DOES 1-25, inclusive,<br><br>            Defendants. | Case No. 2:11-CV-02278 JAM-JFM<br><br>ORDER GRANTING PLAINTIFFS' MOTION TO REMAND |

    This matter comes before the Court on Plaintiffs The People of the State of California by and through Sacramento Metropolitan Area Air Quality Management District's ("Plaintiffs" or "District") Motion to Remand(Doc. #10). Plaintiffs ask the Court to remand this action back to state court on the grounds that the Court lacks jurisdiction. Defendants Hardesty Sand & Gravel, Joseph Hardesty, and Yvette

1

Hardesty, collectively ("Defendants"), oppose the motion (Doc. #12).[1]

## I.   BACKGROUND

### A.   Regulatory Background

The Federal Clean Air Act, 42 U.S.C. § 7401 et seq., ("CAA") established a combined state and federal program to control air pollution. The CAA "establishes a federal framework for ensuring the nation's air quality," but gives states the "primary responsibility" for implementing the Act and achieving clean air standards. California v. United States, 215 F.3d 1005, 1007 (9th Cir. 2000).

The direct regulation of emissions from stationary sources is primarily left to the states. CAA § 116, 42 U.S.C. § 7416; see also Engine Manufacturers Ass'n v. EPA, 88 F.3d 1075, 1079 (D.C. Cir. 1996) [hereinafter "EMA"] (describing a "history of detailed state regulation of stationary sources"). On the other hand, the federal government sets nationwide emissions standards for mobile sources. The category of "mobile sources" includes both motor vehicles and "nonroad" sources. See CAA § 202, 42 U.S.C. § 7521 (giving the Administrator of the Environmental Protection Agency ("EPA") the authority to set emissions standards for new motor vehicles); CAA § 213, 42 U.S.C. § 7547 (same for nonroad sources).

States must develop plans for achieving the federal air quality standards, including regulations governing vehicle and engine use, as well as requirements controlling and limiting

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for January 25, 2012.

emissions from stationary and other pollutant sources.  42 U.S.C. §§ 7410, 7416, 7511a, 7521, 7543(d).  As long as the plans demonstrate attainment of the federal standard, states are "at liberty to adopt whatever mix of emission limitations [they] deem[] best suited to [their] particular situation."  Train v. N.R.D.C., 421 U.S. 60, 79 (1975).

In California, the Legislature gave the California Air Resources Board ("CARB") primary authority for controlling vehicular air pollution, but delegated the principal authority over all non-vehicular sources, including area-wide, indirect, stationary and portable sources, to 35 local air districts.  See Cal. Health & Safety Code § 40960.

Accordingly, CARB created the Portable Equipment Registration Program ("PERP"), which allows engine owners to register their engines once with the State rather than obtain local permits in each air district in which they operate.

Plaintiffs regulate air quality at the local level.  To meet state and federal standards, the District has adopted a permitting scheme under Sacramento Metropolitan Air Quality Management District Rule and Regulation, Rule 201 ("Rule 201").  See Pittard Decl. (Doc. #10-3, Ex. 1).  Rule 201 requires any business or person to obtain an Authority to Construct ("AC") or a Permit to Operate ("PTO") before installing or operating new equipment or processes that may release or control air contaminants.  See id.

B.   Factual Allegations and Procedural Background

According to Plaintiffs' Complaint, Defendants operate a sand and gravel mine in a rural area in southeast Sacramento

3

County that historically was the site of gold mining operations. The gold mining left tailings consisting of soil, sand, and gravel. Defendants' mining process involves digging out these tailings and placing them on machinery that separates the material according to type and size for use in construction and other industries.

Defendants' facility is typical for this type of operation. There is an "active mine" area where tailings are removed and roughly sorted and a "central plant" where the materials are further sorted and stockpiled for sale to customers. As a result of its ongoing operations, the central plant has been moved throughout the site on a more or less regular basis chasing new deposits of sand and gravel.

Defendants applied for and obtained PERP registrations for some of the engines and equipments used at the mine site. The central plant engine was registered under PERP, but the central plant equipment was not. Defendants did not obtain a local air district permit for any of the engines or equipment at the mine site.

Plaintiffs learned of Defendants' operation in August 2006. They issued a notice of violation for operating a sand and gravel facility without a permit.

On June 10, 2009, Plaintiffs filed a Petition for Order of Abatement before the Hearing Board of the Sacramento Metropolitan Air Quality Management District ("the Board") alleging that Defendants were operating engines and equipment without a valid permit in violation of Rule 201. Following a multi-day hearing, the Board issued an Abatement Order finding

1  Defendants in violation.  See Pittard Decl. (Doc. # 10-5, Ex. 3)
2  (Abatement Order).  The Board ordered Defendants to cease
3  operation of the central plant equipment and all internal
4  combustion engines with a rating greater than 50 horsepower
5  until Defendants obtained a permit from the District.  Id.
6       Defendants filed a writ of mandate challenging the Board's
7  decision in Sacramento County Superior Court.  On August 17,
8  2010, the Superior Court denied Defendants' writ.  See Pittard
9  Decl. (Doc. # 10-6, Ex. 4) (Judgment Denying First Amended
10 Verified Petition for Writ).  Defendants appealed the trial
11 court's decision on November 17, 2010.  The Third District Court
12 of Appeal affirmed the Superior Court's decision.  See Hardesty
13 v. Sacramento Metropolitan Air Quality Management District, No.
14 C065784, 2011 WL 6779313 (Cal.Ct.App.3d, Dec. 27, 2011).
15      The instant matter concerns civil penalties to be assessed
16 against Defendants for operating the mine and related engines
17 without valid PERP registration or district permits.  Plaintiffs
18 filed the Complaint for Civil Penalties (Doc. #1) on April 13,
19 2011 in the Superior Court of California for the County of
20 Sacramento.  The Complaint alleges three causes of action:
21 (1) Operation of Engines and Equipment without a Permit and
22 Emission of Toxic Air Contaminants, (2) Violation of Abatement
23 Order; and (3) Failure to File Annual Reports.  Plaintiffs pray
24 for civil penalties to be assessed against Defendants.
25      Defendants removed the action to this Court on August 26,
26 2011 on the basis that Plaintiffs' claims arise under the
27 Federal Clean Air Act ("CAA"), 42 U.S.C. 7401 et seq.  See Doc.
28 #1.

## II. OPINION

### A. Legal Standard

#### 1. Motion to Remand

Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. 28 U.S.C. § 1441(a).

Removal of a case to a United States district court may be challenged by motion. 28 U.S.C. § 1441(c). On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper. Gaus v. Miles, Inc., 980 F.2d 564, 566-67 (9th Cir. 1992).

Where, as here, when the parties are not diverse, "federal-question jurisdiction is required." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987). The court must determine whether the complaint affirmatively alleges a federal claim. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Under the "well-pleaded complaint rule," federal jurisdiction is present "only when a federal question is presented on the face of plaintiff's properly pleaded complaint." Caterpillar, 482 U.S. at 392. "A defense that raises a federal question is inadequate to confer federal jurisdiction." Merrill Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 808 (1986).

#### 2. Judicial Notice

Plaintiffs request judicial notice of the following documents:

(1) Rule 201; (2) Order of Abatement; (3) Judgment Denying First Amended Verified Petition for Writ of Mandate And Complaint For Declaratory And Injunctive Relief; and (4) December 27, 2011 decision of the Court of Appeal of the State of California, Third Appellate District in Case Number C065784.  Plaintiffs' Req. for Judicial Notice (Doc. #10-1, Exs. 1-3; Doc. #13-1, Ex. A).  Defendants do not object to Plaintiffs' request.

Courts may consider extrinsic evidence when plaintiffs' claims depend on the contents of a document and the parties do not dispute the authenticity of the document.  Knievel v. ESPN, 393 F.3d 1069, 1076 (9th Cir. 2005).  Accordingly, the Court grants Plaintiffs' request for judicial notice pursuant to Federal Rule of Evidence 201.

　　B.　　Claims for Relief

　　　　1.　　The Complaint As A Basis For Removal

As discussed supra, under the "well-pleaded complaint rule," federal jurisdiction is present "only when a federal question is presented on the face of plaintiff's properly pleaded complaint."  Caterpillar, 482 U.S. at 392.  For a case such as this, in which the causes of action are based on state law, "the federal interest at stake must be substantial."  Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996).  "[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  Merrell Dow, 478 U.S. at 813.  The essence of a preemption claims is that state law conflicts with a federal law and should give way.  As discussed below, no such conflict exists in this case.

Defendants argue that the District's legislative authority to create rules is delineated by Health & Safety Code section 41010 which requires that the District's rules not conflict with state and federal laws, rules, and regulations.  Cal. Health & Safety Code § 41010 (a).  Thus, Defendants continue, as a matter of California law, any court hearing Plaintiffs' Complaint must interpret and construct federal law to determine if Rule 201 and other interconnected rules promulgated by the District are in conflict with state and federal laws, rules, and regulations.

Despite Defendants' general argument that state laws should not conflict with federal laws, Defendants do not point to any "sufficiently real and substantial" controversies respecting the construction and effect of the CAA.  See Grable & Sons Metal Products Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 316 (2005) (holding that to have federal jurisdiction, it must be "plain that a controversy respecting the construction and effect of the federal laws is involved and is sufficiently real and substantial.") (internal quotations omitted).  As Plaintiffs argue, the Complaint does not raise or depend on the resolution of a substantial federal issue under the CAA.  The only potential issue is the definition of the federal term "nonroad engines."  But, the classification of the engines as nonroad engines under the CAA – and the application of the nonroad engine, same location and stationary source concepts – is not at issue in this action for civil penalties and Plaintiffs' Complaint does not present a substantial federal question.

Furthermore, although the CAA provides the basis for adoption of the state rules and regulations, the federal origin

1 of the state statute does not confer federal question removal
2 jurisdiction. "The federal nature of the right to be
3 established is decisive – not the source of the authority to
4 establish it. Here the right to be established is one created
5 by the state. . . . [I]t is unimportant that federal consent is
6 the source of state authority." Gully v. First National Bank,
7 299 U.S. 109, 116 (1936). Accordingly, the Court finds that
8 there is not a federal issue presented on the face of the
9 Complaint, nor is the federal interest at stake in the state law
10 causes of action so substantial as to confer federal
11 jurisdiction.

    2. <u>Preemption Defense</u>

It is settled law that "a case may <u>not</u> be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 393 (1987). The only exception is the complete pre-emption doctrine. On occasion, "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" <u>Id.</u> (quoting <u>Metropolitan Life Insurance Co. v. Taylor</u>, 481 U.S. 58, 65 (1987). Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. <u>Id.</u>; see <u>Franchise Tax Board of Cal. v. Laborers</u>

9

1  Vacation Trust for So. Cal., 463 U.S. 1, 24 (1983) ("[I]f a
2  federal cause of action completely pre-empts a state cause of
3  action any complaint that comes within the scope of the federal
4  cause of action necessarily 'arises under' federal law").
5      As Plaintiffs persuasively argue, the law is clear that
6  Defendants cannot force removal by pleading an affirmative
7  defense that raises federal issues. Caterpillar Inc., 482 U.S.
8  at 393 (discussed supra). Defendants rely on Ormet Corp. v.
9  Ohio Power Co., 98 F.3d 799 (4th Cir. 1996) and Grable & Sons
10 Metal Products, Inc. v. Darue Engineering & Manufacturing, 545
11 U.S. 308 (2005), but both of those cases concerned the
12 resolution of a different issue: whether federal jurisdiction
13 can be found in the absence of a federally created private right
14 of action. It can. Unlike the instant case, in both those
15 cases, it was the complaint and not the affirmative defenses
16 that raised the federal issue. Because the only federal
17 question presented is whether the permit is preempted, the
18 removal of the action is governed by whether there is
19 jurisdiction based on complete preemption.
20     Defendants argue that Rule 201 establishes standards and
21 other requirements related to the control of emissions, and
22 should therefore be completely preempted by CAA section 209, 42
23 U.S.C. § 7543. As discussed supra, because the regulation of
24 mobile source emissions is a federal responsibility, Congress
25 has expressly preempted states from setting emissions standards
26 for mobile sources. CAA § 209(a), 42 U.S.C. § 7543(a)
27 (preempting state regulation of new motor vehicle emissions);
28 CAA § 209(e), 42 U.S.C. § 7543(e) (preempting state regulation

10

1  of emissions from nonroad mobile sources).  Defendants contend
2  that because Rule 201 effectively prohibits the use of nonroad
3  engines that do not meet certain standards, it is essentially a
4  standard relating to the federally preempted control of
5  emissions.
6      Plaintiffs counter that section 209 does not explicitly
7  allow preemption, and therefore, the Court should consider it to
8  be, at most, partial preemption.  Plaintiffs cite to California
9  v. Dept. of the Navy, 624 F.2d 885 (9th Cir. 1980), Bearse v.
10 Port of Seattle, No. C09-0957RSL, 2009 WL 3066675 (W.D. Wash.
11 Sept. 22, 2009), and In re Methyl Tertiary Butyl Ether ("MTBE")
12 Products Liability Litigation, 399 F.Supp.2d 356 (S.D.N.Y. 2005)
13 to support the argument that courts have already interpreted
14 similar language in the CAA to impose only partial preemption.
15     In line with the cases cited by Plaintiffs, the Court finds
16 that because Congress limited section 209 preemption to emission
17 standards, and declined to completely preempt the regulation of
18 nonroad engines, Rule 201 is not a complete preemption and does
19 not support removal of this action to federal court.
20     The Court also holds that Rule 201 is not a standard
21 relating to the control of emissions.  The Supreme Court, in
22 Engine Manufacturers Ass'n. v. South Coast Air Quality
23 Management, 541 U.S. 246, 253 (2004) provided examples of
24 requirements contained in Title II of the CAA that would
25 properly be considered "standards" relating to the control of
26 emissions for federal preemption purposes.  For example, a state
27 regulation requiring that vehicles or engines "not emit more
28 than a certain amount of a given pollutant, must be equipped

11

with a certain type of pollution-control device, or must have some other design feature related to the control of emissions" are all "standards" relating to the control of emissions. South Coast, 541 U.S. at 253. Here, there is little similarity between the examples set forth in South Coast and the permit regime established by Rule 201. Rule 201 does not require that a vehicle or engine emit below a certain level of a given pollutant. Cf. Pacific Merchant Shipping Ass'n v. Goldstene, 517 F.3d 1108, 1109 (9th Cir. 2008) (holding that regulations limiting emissions from auxiliary diesel engines of ocean-going vessels within twenty-four miles of California's coast are preempted by the CAA). Nor does Rule 201 impose equipment or design requirements on vehicles or engines. Cf. South Coast, 541 U.S. at 253 (holding that rules requiring local fleet operators to purchase or lease only vehicles that met state motor vehicle pollution standards were related to controlling emissions and were preempted by the CAA). Rule 201 simply requires certain facilities to obtain permits.

   Not only does Rule 201 not resemble the characteristics of a standard regulating emissions, but section 209(d)[2] contains a savings clause which courts have held allows states to impose "in-use requirements," such as permits. EMA, 88 F.3d at 1094. The EPA interprets the CAA to extend this allowance of in-use requirements to regulations of nonroad engines. Preemption of

---

[2] Section 209(d) states that: Nothing in this part shall preclude or deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles. CAA § 209(d), 42 U.S.C. § 7543(d).

State Regulation for Nonroad Engine and Vehicle Standards, 59 Fed.Reg. 36, 969, 36, 973-74 (July 20, 1994). In EMA, the court held that "Chevron deference permits the EPA's interpretation ... incorporat[ing] into the nonroad regime at least the reservation of the states' right to impose in-use regulations found in § 209(d)." EMA, 88 F.3d at 1094; see also Pacific Merchant, 517 F.3d at 1115 (explaining that the EPA interprets section 209(d) to allow in-use requirements to regulate nonroad engines). Additionally, because section 209(e)[3] explicitly preempts only the narrow area of state engine-emission standard setting authority, and leaves intact the local nonroad engine in-use regulatory authority, the preemption is only partial preemption.

Furthermore, Defendants' argument that because Section 201 relates to emissions, it is therefore preempted, is unpersuasive. Under Defendants' logic, "every rule promulgated by the District relating to nonroad engines and vehicles would be preempted by § 209(e)." Jensen Family Farm, Inc. v. Monterey Bay Unified Air Pollution Control District, 644 F.3d 934, 941 (9th Cir. 2011).

Finally, the Court notes that the Third District Court of Appeals held that Rule 201 was not preempted. In the state

---

[3] Section 209(e)(1) states: Prohibition on certain State standards. No State or any political subdivision thereof shall adopt or attempt to enforce any standard or other requirement relating to the control of emissions from either of the following new nonroad engines or nonroad vehicles subject to regulation under this chapter—
(A) New engines which are used in construction equipment or vehicles or used in farm equipment or vehicles and which are smaller than 175 horsepower.
(B) New locomotives or new engines used in locomotives. CAA § 209(e), 42 U.S.C. § 7543(e).

court case, Defendants argued that the District's attempt to regulate the central plant engine is preempted by the CAA because Rule 201 contains an emissions standard that has not been approved by the EPA.  The Third District Court of Appeal held that Defendants' argument fails because "the central plant equipment is not a mobile source of air pollution within the meaning of the CAA." Hardesty, 2011 WL 6779313 at *10.  The Court further held that "even if the emissions exemption applied to the central plant engine, this engine is not a 'nonroad' engine within the meaning of the CAA." Id.  Thus, for the numerous reasons discussed supra, the Court holds that Rule 201 is not completely preempted.

### III. ORDER

For the reasons set forth above, Plaintiffs' Motion to Remand is GRANTED.

IT IS SO ORDERED.

Dated:  February 23, 2012

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE