1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11  THE PEOPLE OF THE STATE OF        )  Case No. 2:11-CV-02278 JAM-JFM
    CALIFORNIA by and through         )
12  SACRAMENTO METROPOLITAN AIR       )  ORDER GRANTING PLAINTIFFS'
    QUALITY MANAGEMENT DISTRICT,      )  MOTION TO REMAND
13                                    )
                   Plaintiffs,        )
14                                    )
         v.                           )
15                                    )
    HARDESTY SAND & GRAVEL, a         )
16  California business in a form     )
    unknown, JOSEPH HARDESTY as an    )
17  individual and as the owner or    )
    officer of HARDESTY SAND &        )
18  GRAVEL; YVETTE HARDESTY as an     )
    individual and as the owner or    )
19  officer of HARDESTY SAND &        )
    GRAVEL and DOES 1-25, inclusive,  )
20                                    )
                   Defendants.        )
21  _____ )

22        This matter comes before the Court on Plaintiffs The People

23  of the State of California by and through Sacramento

24  Metropolitan Area Air Quality Management District's

25  ("Plaintiffs" or "District") Motion to Remand(Doc. #10).

26  Plaintiffs ask the Court to remand this action back to state

27  court on the grounds that the Court lacks jurisdiction.

28  Defendants Hardesty Sand & Gravel, Joseph Hardesty, and Yvette

                                    1

1  Hardesty, collectively ("Defendants"), oppose the motion (Doc.
2  #12).[1]

3                         I.   BACKGROUND

4       A.   Regulatory Background

5       The Federal Clean Air Act, 42 U.S.C. § 7401 et seq.,
6  ("CAA") established a combined state and federal program to
7  control air pollution.  The CAA "establishes a federal framework
8  for ensuring the nation's air quality," but gives states the
9  "primary responsibility" for implementing the Act and achieving
10 clean air standards.  California v. United States, 215 F.3d
11 1005, 1007 (9th Cir. 2000).

12      The direct regulation of emissions from stationary sources
13 is primarily left to the states.  CAA § 116, 42 U.S.C. § 7416;
14 see also Engine Manufacturers Ass'n v. EPA, 88 F.3d 1075, 1079
15 (D.C. Cir. 1996) [hereinafter "EMA"] (describing a "history of
16 detailed state regulation of stationary sources").  On the other
17 hand, the federal government sets nationwide emissions standards
18 for mobile sources.  The category of "mobile sources" includes
19 both motor vehicles and "nonroad" sources.  See CAA § 202, 42
20 U.S.C. § 7521 (giving the Administrator of the Environmental
21 Protection Agency ("EPA") the authority to set emissions
22 standards for new motor vehicles); CAA § 213, 42 U.S.C. § 7547
23 (same for nonroad sources).

24      States must develop plans for achieving the federal air
25 quality standards, including regulations governing vehicle and
26 engine use, as well as requirements controlling and limiting

27  _____

28  [1] This motion was determined to be suitable for decision without
    oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled
    for January 25, 2012.

                              2

1  emissions from stationary and other pollutant sources.  42

2  U.S.C. §§ 7410, 7416, 7511a, 7521, 7543(d).  As long as the

3  plans demonstrate attainment of the federal standard, states are

4  "at liberty to adopt whatever mix of emission limitations [they]

5  deem[] best suited to [their] particular situation."  Train v.

6  N.R.D.C., 421 U.S. 60, 79 (1975).

7      In California, the Legislature gave the California Air

8  Resources Board ("CARB") primary authority for controlling

9  vehicular air pollution, but delegated the principal authority

10  over all non-vehicular sources, including area-wide, indirect,

11  stationary and portable sources, to 35 local air districts.  See

12  Cal. Health & Safety Code § 40960.

13      Accordingly, CARB created the Portable Equipment

14  Registration Program ("PERP"), which allows engine owners to

15  register their engines once with the State rather than obtain

16  local permits in each air district in which they operate.

17      Plaintiffs regulate air quality at the local level.  To

18  meet state and federal standards, the District has adopted a

19  permitting scheme under Sacramento Metropolitan Air Quality

20  Management District Rule and Regulation, Rule 201 ("Rule 201").

21  See Pittard Decl. (Doc. #10-3, Ex. 1).  Rule 201 requires any

22  business or person to obtain an Authority to Construct ("AC") or

23  a Permit to Operate ("PTO") before installing or operating new

24  equipment or processes that may release or control air

25  contaminants.  See id.

26      B.   Factual Allegations and Procedural Background

27      According to Plaintiffs' Complaint, Defendants operate a

28  sand and gravel mine in a rural area in southeast Sacramento

1  County that historically was the site of gold mining operations.

2  The gold mining left tailings consisting of soil, sand, and

3  gravel.  Defendants' mining process involves digging out these

4  tailings and placing them on machinery that separates the

5  material according to type and size for use in construction and

6  other industries.

7       Defendants' facility is typical for this type of operation.

8  There is an "active mine" area where tailings are removed and

9  roughly sorted and a "central plant" where the materials are

10  further sorted and stockpiled for sale to customers.  As a

11  result of its ongoing operations, the central plant has been

12  moved throughout the site on a more or less regular basis

13  chasing new deposits of sand and gravel.

14       Defendants applied for and obtained PERP registrations for

15  some of the engines and equipments used at the mine site.  The

16  central plant engine was registered under PERP, but the central

17  plant equipment was not.  Defendants did not obtain a local air

18  district permit for any of the engines or equipment at the mine

19  site.

20       Plaintiffs learned of Defendants' operation in August 2006.

21  They issued a notice of violation for operating a sand and

22  gravel facility without a permit.

23       On June 10, 2009, Plaintiffs filed a Petition for Order of

24  Abatement before the Hearing Board of the Sacramento

25  Metropolitan Air Quality Management District ("the Board")

26  alleging that Defendants were operating engines and equipment

27  without a valid permit in violation of Rule 201.  Following a

28  multi-day hearing, the Board issued an Abatement Order finding

1  Defendants in violation.  <u>See</u> Pittard Decl. (Doc. # 10-5, Ex. 3)

2  (Abatement Order).  The Board ordered Defendants to cease

3  operation of the central plant equipment and all internal

4  combustion engines with a rating greater than 50 horsepower

5  until Defendants obtained a permit from the District.  <u>Id.</u>

6      Defendants filed a writ of mandate challenging the Board's

7  decision in Sacramento County Superior Court.  On August 17,

8  2010, the Superior Court denied Defendants' writ.  <u>See</u> Pittard

9  Decl. (Doc. # 10-6, Ex. 4) (Judgment Denying First Amended

10  Verified Petition for Writ).  Defendants appealed the trial

11  court's decision on November 17, 2010.  The Third District Court

12  of Appeal affirmed the Superior Court's decision.  <u>See</u> <u>Hardesty</u>

13  <u>v. Sacramento Metropolitan Air Quality Management District</u>, No.

14  C065784, 2011 WL 6779313 (Cal.Ct.App.3d, Dec. 27, 2011).

15      The instant matter concerns civil penalties to be assessed

16  against Defendants for operating the mine and related engines

17  without valid PERP registration or district permits.  Plaintiffs

18  filed the Complaint for Civil Penalties (Doc. #1) on April 13,

19  2011 in the Superior Court of California for the County of

20  Sacramento.  The Complaint alleges three causes of action:

21  (1) Operation of Engines and Equipment without a Permit and

22  Emission of Toxic Air Contaminants, (2) Violation of Abatement

23  Order; and (3) Failure to File Annual Reports.  Plaintiffs pray

24  for civil penalties to be assessed against Defendants.

25      Defendants removed the action to this Court on August 26,

26  2011 on the basis that Plaintiffs' claims arise under the

27  Federal Clean Air Act ("CAA"), 42 U.S.C. 7401 <u>et seq</u>.  <u>See</u> Doc.

28  #1.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

II.   OPINION

A.   <u>Legal Standard</u>

    1.   <u>Motion to Remand</u>

Any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.  28 U.S.C. § 1441(a).

Removal of a case to a United States district court may be challenged by motion.  28 U.S.C. § 1441(c).  On a motion to remand, the removing defendant faces a strong presumption against removal, and bears the burden of establishing that removal is proper.  <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566-67 (9th Cir. 1992).

Where, as here, when the parties are not diverse, "federal-question jurisdiction is required."  <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).  The court must determine whether the complaint affirmatively alleges a federal claim.  <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 6 (2003).  Under the "well-pleaded complaint rule," federal jurisdiction is present "only when a federal question is presented on the face of plaintiff's properly pleaded complaint."  <u>Caterpillar</u>, 482 U.S. at 392. "A defense that raises a federal question is inadequate to confer federal jurisdiction."  <u>Merrill Dow Pharm., Inc. v. Thompson</u>, 478 U.S. 804, 808 (1986).

    2.   <u>Judicial Notice</u>

Plaintiffs request judicial notice of the following documents:

1    (1) Rule 201; (2) Order of Abatement; (3) Judgment Denying First

2    Amended Verified Petition for Writ of Mandate And Complaint For

3    Declaratory And Injunctive Relief; and (4) December 27, 2011

4    decision of the Court of Appeal of the State of California,

5    Third Appellate District in Case Number C065784.  Plaintiffs'

6    Req. for Judicial Notice (Doc. #10-1, Exs. 1-3; Doc. #13-1, Ex.

7    A).  Defendants do not object to Plaintiffs' request.

8        Courts may consider extrinsic evidence when plaintiffs'

9    claims depend on the contents of a document and the parties do

10   not dispute the authenticity of the document.  Knievel v. ESPN,

11   393 F.3d 1069, 1076 (9th Cir. 2005).  Accordingly, the Court

12   grants Plaintiffs' request for judicial notice pursuant to

13   Federal Rule of Evidence 201.

14        B.   Claims for Relief

15             1.   The Complaint As A Basis For Removal

16        As discussed supra, under the "well-pleaded complaint

17   rule," federal jurisdiction is present "only when a federal

18   question is presented on the face of plaintiff's properly

19   pleaded complaint."  Caterpillar, 482 U.S. at 392.  For a case

20   such as this, in which the causes of action are based on state

21   law, "the federal interest at stake must be substantial."  Ormet

22   Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996).

23   "[T]he mere presence of a federal issue in a state cause of

24   action does not automatically confer federal-question

25   jurisdiction."  Merrell Dow, 478 U.S. at 813.  The essence of a

26   preemption claims is that state law conflicts with a federal law

27   and should give way.  As discussed below, no such conflict

28   exists in this case.

7

1   Defendants argue that the District's legislative authority
2   to create rules is delineated by Health & Safety Code section
3   41010 which requires that the District's rules not conflict with
4   state and federal laws, rules, and regulations.  Cal. Health &
5   Safety Code § 41010 (a).  Thus, Defendants continue, as a matter
6   of California law, any court hearing Plaintiffs' Complaint must
7   interpret and construct federal law to determine if Rule 201 and
8   other interconnected rules promulgated by the District are in
9   conflict with state and federal laws, rules, and regulations.
10   Despite Defendants' general argument that state laws should
11   not conflict with federal laws, Defendants do not point to any
12   "sufficiently real and substantial" controversies respecting the
13   construction and effect of the CAA.  See Grable & Sons Metal
14   Products Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308
15   316 (2005) (holding that to have federal jurisdiction, it must
16   be "plain that a controversy respecting the construction and
17   effect of the federal laws is involved and is sufficiently real
18   and substantial.") (internal quotations omitted).  As Plaintiffs
19   argue, the Complaint does not raise or depend on the resolution
20   of a substantial federal issue under the CAA.  The only
21   potential issue is the definition of the federal term "nonroad
22   engines."  But, the classification of the engines as nonroad
23   engines under the CAA – and the application of the nonroad
24   engine, same location and stationary source concepts – is not at
25   issue in this action for civil penalties and Plaintiffs'
26   Complaint does not present a substantial federal question.
27   Furthermore, although the CAA provides the basis for
28   adoption of the state rules and regulations, the federal origin

1   of the state statute does not confer federal question removal

2   jurisdiction.  "The federal nature of the right to be

3   established is decisive – not the source of the authority to

4   establish it.  Here the right to be established is one created

5   by the state. . . . [I]t is unimportant that federal consent is

6   the source of state authority."  Gully v. First National Bank,

7   299 U.S. 109, 116 (1936).  Accordingly, the Court finds that

8   there is not a federal issue presented on the face of the

9   Complaint, nor is the federal interest at stake in the state law

10  causes of action so substantial as to confer federal

11  jurisdiction.

12            2.   Preemption Defense

13      It is settled law that "a case may not be removed to

14  federal court on the basis of a federal defense, including the

15  defense of pre-emption, even if the defense is anticipated in

16  the plaintiff's complaint, and even if both parties concede that

17  the federal defense is the only question truly at issue."

18  Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987).  The

19  only exception is the complete pre-emption doctrine.  On

20  occasion, "the pre-emptive force of a statute is so

21  'extraordinary' that it 'converts an ordinary state common-law

22  complaint into one stating a federal claim for purposes of the

23  well-pleaded complaint rule.'"  Id. (quoting Metropolitan Life

24  Insurance Co. v. Taylor, 481 U.S. 58, 65 (1987).  Once an area

25  of state law has been completely pre-empted, any claim

26  purportedly based on that pre-empted state law is considered,

27  from its inception, a federal claim, and therefore arises under

28  federal law. Id.; see Franchise Tax Board of Cal. v. Laborers

1   Vacation Trust for So. Cal._, 463 U.S. 1, 24 (1983) ("[I]f a

2   federal cause of action completely pre-empts a state cause of

3   action any complaint that comes within the scope of the federal

4   cause of action necessarily 'arises under' federal law").

5       As Plaintiffs persuasively argue, the law is clear that

6   Defendants cannot force removal by pleading an affirmative

7   defense that raises federal issues. Caterpillar Inc., 482 U.S.

8   at 393 (discussed supra). Defendants rely on Ormet Corp. v.

9   Ohio Power Co., 98 F.3d 799 (4th Cir. 1996) and Grable & Sons

10   Metal Products, Inc. v. Darue Engineering & Manufacturing, 545

11   U.S. 308 (2005), but both of those cases concerned the

12   resolution of a different issue: whether federal jurisdiction

13   can be found in the absence of a federally created private right

14   of action. It can. Unlike the instant case, in both those

15   cases, it was the complaint and not the affirmative defenses

16   that raised the federal issue. Because the only federal

17   question presented is whether the permit is preempted, the

18   removal of the action is governed by whether there is

19   jurisdiction based on complete preemption.

20       Defendants argue that Rule 201 establishes standards and

21   other requirements related to the control of emissions, and

22   should therefore be completely preempted by CAA section 209, 42

23   U.S.C. § 7543. As discussed supra, because the regulation of

24   mobile source emissions is a federal responsibility, Congress

25   has expressly preempted states from setting emissions standards

26   for mobile sources. CAA § 209(a), 42 U.S.C. § 7543(a)

27   (preempting state regulation of new motor vehicle emissions);

28   CAA § 209(e), 42 U.S.C. § 7543(e) (preempting state regulation

1  of emissions from nonroad mobile sources).  Defendants contend

2  that because Rule 201 effectively prohibits the use of nonroad

3  engines that do not meet certain standards, it is essentially a

4  standard relating to the federally preempted control of

5  emissions.

6       Plaintiffs counter that section 209 does not explicitly

7  allow preemption, and therefore, the Court should consider it to

8  be, at most, partial preemption.  Plaintiffs cite to <u>California</u>

9  <u>v. Dept. of the Navy</u>, 624 F.2d 885 (9th Cir. 1980), <u>Bearse v.</u>

10 <u>Port of Seattle</u>, No. C09-0957RSL, 2009 WL 3066675 (W.D. Wash.

11 Sept. 22, 2009), and <u>In re Methyl Tertiary Butyl Ether ("MTBE")</u>

12 <u>Products Liability Litigation</u>, 399 F.Supp.2d 356 (S.D.N.Y. 2005)

13 to support the argument that courts have already interpreted

14 similar language in the CAA to impose only partial preemption.

15      In line with the cases cited by Plaintiffs, the Court finds

16 that because Congress limited section 209 preemption to emission

17 standards, and declined to completely preempt the regulation of

18 nonroad engines, Rule 201 is not a complete preemption and does

19 not support removal of this action to federal court.

20      The Court also holds that Rule 201 is not a standard

21 relating to the control of emissions.  The Supreme Court, in

22 <u>Engine Manufacturers Ass'n. v. South Coast Air Quality</u>

23 <u>Management</u>, 541 U.S. 246, 253 (2004) provided examples of

24 requirements contained in Title II of the CAA that would

25 properly be considered "standards" relating to the control of

26 emissions for federal preemption purposes.  For example, a state

27 regulation requiring that vehicles or engines "not emit more

28 than a certain amount of a given pollutant, must be equipped

with a certain type of pollution-control device, or must have some other design feature related to the control of emissions" are all "standards" relating to the control of emissions.  South Coast, 541 U.S. at 253.  Here, there is little similarity between the examples set forth in South Coast and the permit regime established by Rule 201.  Rule 201 does not require that a vehicle or engine emit below a certain level of a given pollutant.  Cf. Pacific Merchant Shipping Ass'n v. Goldstene, 517 F.3d 1108, 1109 (9th Cir. 2008) (holding that regulations limiting emissions from auxiliary diesel engines of ocean-going vessels within twenty-four miles of California's coast are preempted by the CAA).  Nor does Rule 201 impose equipment or design requirements on vehicles or engines.  Cf. South Coast, 541 U.S. at 253 (holding that rules requiring local fleet operators to purchase or lease only vehicles that met state motor vehicle pollution standards were related to controlling emissions and were preempted by the CAA).  Rule 201 simply requires certain facilities to obtain permits.

Not only does Rule 201 not resemble the characteristics of a standard regulating emissions, but section 209(d)[2] contains a savings clause which courts have held allows states to impose "in-use requirements," such as permits.  EMA, 88 F.3d at 1094. The EPA interprets the CAA to extend this allowance of in-use requirements to regulations of nonroad engines.  Preemption of

---

[2] Section 209(d) states that: Nothing in this part shall preclude or deny to any State or political subdivision thereof the right otherwise to control, regulate, or restrict the use, operation, or movement of registered or licensed motor vehicles.  CAA § 209(d), 42 U.S.C. § 7543(d).

1 State Regulation for Nonroad Engine and Vehicle Standards, 59

2 Fed.Reg. 36, 969, 36, 973-74 (July 20, 1994).  In <u>EMA</u>, the court

3 held that "<u>Chevron</u> deference permits the EPA's interpretation

4 ... incorporat[ing] into the nonroad regime at least the

5 reservation of the states' right to impose in-use regulations

6 found in § 209(d)."  <u>EMA</u>, 88 F.3d at 1094; <u>see also</u> <u>Pacific</u>

7 <u>Merchant</u>, 517 F.3d at 1115 (explaining that the EPA interprets

8 section 209(d) to allow in-use requirements to regulate nonroad

9 engines).  Additionally, because section 209(e)[3] explicitly

10 preempts only the narrow area of state engine-emission standard

11 setting authority, and leaves intact the local nonroad engine

12 in-use regulatory authority, the preemption is only partial

13 preemption.

14       Furthermore, Defendants' argument that because Section 201

15 relates to emissions, it is therefore preempted, is

16 unpersuasive.  Under Defendants' logic, "every rule promulgated

17 by the District relating to nonroad engines and vehicles would

18 be preempted by § 209(e)."  <u>Jensen Family Farm, Inc. v. Monterey</u>

19 <u>Bay Unified Air Pollution Control District</u>, 644 F.3d 934, 941

20 (9th Cir. 2011).

21       Finally, the Court notes that the Third District Court of

22 Appeals held that Rule 201 was not preempted.  In the state

23 _____

24 [3] Section 209(e)(1) states: Prohibition on certain State standards.
No State or any political subdivision thereof shall adopt or
attempt to enforce any standard or other requirement relating to

25 the control of emissions from either of the following new nonroad
engines or nonroad vehicles subject to regulation under this

26 chapter—
(A) New engines which are used in construction equipment or

27 vehicles or used in farm equipment or vehicles and which are
smaller than 175 horsepower.

28 (B) New locomotives or new engines used in locomotives.  CAA
§ 209(e), 42 U.S.C. § 7543(e).

1  court case, Defendants argued that the District's attempt to

2  regulate the central plant engine is preempted by the CAA

3  because Rule 201 contains an emissions standard that has not

4  been approved by the EPA.  The Third District Court of Appeal

5  held that Defendants' argument fails because "the central plant

6  equipment is not a mobile source of air pollution within the

7  meaning of the CAA."  Hardesty, 2011 WL 6779313 at *10.  The

8  Court further held that "even if the emissions exemption applied

9  to the central plant engine, this engine is not a 'nonroad'

10  engine within the meaning of the CAA."  Id.  Thus, for the

11  numerous reasons discussed supra, the Court holds that Rule 201

12  is not completely preempted.

13                          III. ORDER

14      For the reasons set forth above, Plaintiffs' Motion to

15  Remand is GRANTED.

16      IT IS SO ORDERED.

17  Dated:  February 23, 2012                 _____

18                                            JOHN A. MENDEZ,
                                              UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28